1

2

3

4

5

6

7

8                       United States District Court

9                      Eastern District of California

10

11

12  Kenneth G. Johnson,

13          Plaintiff,                    No. Civ. S 01-1033 FCD PAN P

14      vs.                               Findings and Recommendations

15  Cal A. Terhune, et al.,

16          Defendants.

17                                  -oOo-

18       Plaintiff is a state prisoner without counsel prosecuting a

19  civil rights action.

20       Presently before the court are cross-motions for summary

21  judgment between plaintiff and defendants Correctional Managed

22  Care Medical Corporation (CMCMC or Corporation), Nurse Massetti

23  (aka Marretti) and Nurse Chapman (hereinafter defendants).

24  Pending summary judgment motions as to other defendants will be

25  addressed separately.

26       The action proceeds on the May 24, 2001, verified complaint.

Plaintiff alleges correctional officers at California Medical
Facility - Vacaville (CMF) brutally beat him, breaking a bone in
his ankle.  For 16 days he did not receive any medical care for
this broken bone or other injuries caused by the beating.

With respect to defendants who are parties to the pending
motions, plaintiff alleges he arrived at Madera County Jail after
11:00 p.m. and was taken inside in a wheelchair.  Defendant
Chapman, a medical assistant employed by CMCMC, told plaintiff
she had his medication for Hepatitis C and he would receive it in
the morning.  Plaintiff asked to see a doctor for his broken
bone, and to change clothes because he was soaked in pepper
spray.  Chapman refused the requests and failed to examine
plaintiff.  Throughout the night plaintiff's pleas for help were
ignored.  In the morning defendant Massetti (aka Marretti), a
CMCMC medical assistant, gave plaintiff Hepatitis C medicine but
refused further aid.  Massetti wrote a report stating plaintiff
had abrasions and bruising on his face and said he was "stomped
on" by officers.  Massetti x-rayed plaintiff's foot and ankle.

Plaintiff then was removed from Madera County Jail and taken
to court for an appearance, and returned to custody at CMF.  Many
days later, while in custody of the California Department of
Corrections (CDC), plaintiff received extensive care for his
broken bone.  The bone had to be re-set because it was "healing
funny" due to the delay in medical treatment.

Standard on Summary Judgment

A party may move, without or without supporting affidavits,

1  for a summary judgment and the judgment sought shall be rendered

2  forthwith if the pleadings, depositions, answers to

3  interrogatories, and admissions on file, together with the

4  affidavits, if any, show that there is no genuine issue as to any

5  material fact and that the moving party is entitled to a judgment

6  as a matter of law.  Fed. R. Civ. P. 56(a)-(c).

7      An issue is "genuine" if the evidence is such that a

8  reasonable jury could return a verdict for the opposing party.

9  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A fact is

10  "material" if it affects the right to recover under applicable

11  substantive law.  Id.  The moving party must submit evidence that

12  establishes the existence of an element essential to that party's

13  case and on which that party will bear the burden of proof at

14  trial.  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

15  The moving party "always bears the initial responsibility of

16  informing the district court of the basis for its motion and

17  identifying those portions of 'the pleadings, depositions,

18  answers to interrogatories, and admissions on file, together with

19  the affidavits, if any'" that the moving party believes

20  demonstrate the absence of a genuine issue of material fact.  Id.

21  at 323.  If the movant does not bear the burden of proof on an

22  issue, the movant need only point to the absence of evidence to

23  support the opponent's burden.  To avoid summary judgment on an

24  issue upon which the opponent bears the burden of proof, the

25  opponent must "go beyond the pleadings and by her own affidavits,

26  or by the "'depositions, answers to interrogatories, and

1  admissions on file,' designate 'specific facts showing that there

2  is a genuine issue for trial.'"   Id. at 324.   The opponent's

3  affirmative evidence must be sufficiently probative that a jury

4  reasonably could decide the issue in favor of the opponent.

5  Matsushita Electric Industrial Co., Inc. v. Zenith Radio

6  Corporation, 475 U.S. 574, 588 (1986).   When the conduct alleged

7  is implausible, stronger evidence than otherwise required must be

8  presented to defeat summary judgment.   Id. at 587.

9      Fed. R. Civ. P. 56(e) provides that "supporting and opposing

10 affidavits shall be made on personal knowledge, shall set forth

11 such facts as would be admissible in evidence, and shall show

12 affirmatively that the affiant is competent to testify to the

13 matters stated therein."   Nevertheless, the Supreme Court has

14 held that the opponent need not produce evidence in a form that

15 would be admissible at trial in order to avoid summary judgment.

16 Celotex, 477 U.S. at 324.   Rather, the questions are (1) whether

17 the evidence could be submitted in admissible form and (2) "if

18 reduced to admissible evidence" would it be sufficient to carry

19 the party's burden at trial.   Id., at 327.   Thus, in Fraser v.

20 Goodale, 342 F.3d 1032 (9th Cir. 2003), objection to the opposing

21 party's reliance upon her diary upon the ground it was hearsay

22 was overruled because the party could testify to all the relevant

23 portions from personal knowledge or read it into evidence as

24 recorded recollection.

25     A verified complaint based on personal knowledge setting

26 forth specific facts admissible in evidence is treated as an

1   affidavit.  Schroeder v. McDonald, 55 F.3d 454 (9th Cir. 1995);

2   McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987).  A verified

3   motion based on personal knowledge in opposition to a summary

4   judgment motion setting forth facts that would be admissible in

5   evidence also functions as an affidavit.  Johnson v. Meltzer, 134

6   F.,3d 1393 (9th Cir. 1998); Jones v. Blanas, 393 F.3d 918 (9th

7   Cir. 2004).

8       Defects in opposing affidavits may be waived if no motion to

9   strike or other objection is made.  Scharf v. United States

10  Attorney General, 597 F.2d 1240 (9th Cir. 1979) (incompetent

11  medical evidence).

12  Analysis

13      The complaint alleges defendants violated plaintiff's civil

14  rights by failing to provide constitutionally adequate medical

15  care under the Eighth Amendment and by CMCMC's failure to train,

16  supervise and discipline its employees.  The pleading also

17  alleges pendent state law claims involving the question of

18  whether defendants committed the tort of medical negligence by

19  failing to meet the requisite "standard of care."

20      "The unnecessary and wanton infliction of pain upon

21  incarcerated individuals under color of law constitutes a

22  violation of the Eighth Amendment . . . ."  McGuckin v. Smith,

23  974 F.2d 1050, 1059 (9th Cir. 1991).  A violation of the Eighth

24  Amendment occurs when prison officials deliberately are

25  indifferent to a prisoner's medical needs.  Id.  The threshold

26  for a medical claim under the Eighth Amendment is extremely high:

A prison official acts with "deliberate indifference . . . only if [he] knows of and disregards an excessive risk to inmate health and safety." <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted).  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." <u>Gibson</u>, 290 F.3d at 1188 (citation omitted).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was." <u>Farmer</u>, 511 U.S. at 839.  "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.  <u>McGuckin</u>, 974 F.2d at 1059 (alteration and citation omitted).

<u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (footnote omitted).

"Deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." <u>Lolli v. County of Orange</u>, 351 F.3d 410, 421 (9th Cir. 2003) (citations omitted); <u>see</u> <u>also</u> <u>Gibson</u>, 290 F.3d at 1197 (acknowledging a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the medical need was obvious and extreme).  Delay in medical treatment can amount to deliberate indifference if (1) the delay seriously affected the medical condition for which plaintiff was seeking treatment, and (2) defendants were aware the delay would cause serious harm. <u>Shapley v. Nevada Board of State Prison Commissioners</u>, 766 F.2d 404, 408 (9th Cir. 1985).

1    In seeking summary judgment, defendants fail to address

2   Eighth Amendment standards at all.  They offer no evidence

3   pertaining to whether plaintiff's medical needs posed a

4   substantial risk of serious harm or whether they were aware of

5   that risk and consciously disregarded it.  Nor does plaintiff

6   establish defendants are liable, as a matter of law, on his

7   Eighth Amendment or state law claims.  The parties' declarations

8   of medical experts create rather than erase factual disputes.

9    Defendant Massetti alone is entitled to summary judgment.

10   It is undisputed Massetti first learned of plaintiff's presence

11   in the jail some time after 8:00 a.m. on June 2, 2000.  She

12   learned plaintiff was on prescribed medications for treatment of

13   the Hepatitis C Virus and lower back pain problems, and provided

14   medicine to him.  She completed progress notes stating plaintiff

15   complained of being "stomped on" by officers and complained of

16   left ankle pain.  She noted in the file plaintiff's leg was

17   swollen above the ankle and he could wiggle his toes but "refused

18   to move" his ankle.  At approximately 9:15 a.m. Massetti x-rayed

19   plaintiff's ankle and wrapped plaintiff's left foot and ankle

20   with an Ace bandage.  Massetti did not contact a doctor.  She

21   entered progress notes stating she advised plaintiff to keep his

22   ankle elevated as much as possible and someone would "re-evaluate

23   after x-ray report [comes] back."  Plaintiff left the jail in a

24   wheelchair at 9:25 a.m. and did not return.  See Defendants'

25   December 2, 2004, Response to Plaintiff's Statement of Disputed

26   and Undisputed Facts, numbers 352-76.  The x-ray results were

1  negative.

2      These undisputed facts show Massetti was <u>not</u> deliberately
3  indifferent to plaintiff's medical condition.  She gave a
4  transient prisoner his medicine (including pain medicine), heard
5  he was in a fight with a deputy, took an x-ray, and wrapped
6  plaintiff's foot and ankle in an Ace bandage.  Perhaps she could
7  have rendered more care, but she clearly met the constitutional
8  threshold.

9      Massetti is entitled to summary judgment on plaintiff's
10 state tort claims involving negligence as well.  To prevail on
11 these claims plaintiff must show Massetti's conduct caused him
12 harm.  Here, the x-ray results were negative and thus Massetti's
13 failure to ensure proper follow up and re-evaluation after return
14 of the x-ray report (assuming it was within her power to do so)
15 did not cause plaintiff harm.

16     Accordingly, the court hereby recommends that:

17     1.  Defendants' September 20, 2004, motion for summary
18 judgment be granted as to defendant Massetti and denied as to
19 other moving parties; and

20     2.  Plaintiff's November 15, 2004, cross-motion for summary
21 judgment as to defendants Correctional Managed Care Medical
22 Corporation, Nurse Massetti and Nurse Chapman be denied.

23     Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these
24 findings and recommendations are submitted to the United States
25 District Judge assigned to this case.  Written objections may be
26 filed within 10 days of service of these findings and

1  recommendations.  The document should be captioned "Objections to

2  Magistrate Judge's Findings and Recommendations."  The district

3  judge may accept, reject, or modify these findings and

4  recommendations in whole or in part.

5      Dated:  August 30, 2005.

6                                    /s/ Peter A. Nowinski

7                                    PETER A. NOWINSKI
                                     Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26